## Charles F. Rupp, Appellee, v. Walgreen Company, Appellant.

### Gen. No. 36,213.

Opinion filed April 11, 1933.

SHANNER & SHANNER and LATIMER, DONOVAN & BROWN, for appellant.

ROYAL W. IRWIN, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

In an action for damages for personal injuries, received by plaintiff in a motorcycle accident on Sunday afternoon, August 3, 1930, on Ashland avenue, near its intersection with Sunnyside avenue, Chicago, there was a trial before a jury in June, 1932, resulting in a verdict finding defendant guilty and assessing plaintiff's damages at $20,000. On July 13, 1932, judgment was entered against defendant in that sum and the present appeal followed.

Plaintiff's declaration consisted of three counts. In the first he alleged in substance that defendant is a duly organized corporation and on August 3, 1930, by

its servants and employees, was engaged in the sale
and distribution from its various retail stores in Chi-
cago of drugs and other articles; that one of its serv-
ants in one store had been hired to do various kinds
of work, including that of delivering drugs and other
articles to customers in Chicago by means of a certain
motorcycle; that plaintiff, in the exercise of due care
for his own safety, was lawfully upon a public high-
way, known as Ashland avenue, near its intersection
with Sunnyside avenue; and that defendant by its said
servant then and there so negligently operated the
motorcycle that it violently ran into, struck and threw
plaintiff down upon the pavement, causing him seri-
ous and permanent injuries, etc. In the second and
third counts there are similar allegations, except that
in the second the negligence charged is that of pro-
pelling the motorcycle at a high and dangerous rate
of speed, and except that in the third count the negli-
gence charged is that of propelling the motorcycle at
an excessive speed without giving notice or warning
of its approach.

To the declaration defendant filed a plea of the
general issue and three special pleas, in substance,
(a) that at the time of the accident it did not employ
the said servant to deliver or transport its merchan-
dise by means of the motorcycle; (b) that at said time
it did not operate or control the motorcycle; and (c)
that at said time the driver of the motorcycle was not
its servant.

Upon the trial, at the close of plaintiff's evidence
and again at the close of all the evidence, defendant's
motions for a directed verdict in its favor severally
were denied. The main issue was whether at the time
of the accident the driver of the motorcycle was acting
in his master's (defendant's) business and within the
scope of his employment. On this issue the following
undisputed facts were disclosed from the testimony:

On and prior to the day mentioned, defendant maintained and operated one of its drug stores at 3959 North Ashland avenue, Chicago, and Albert Bower, about 19 years of age, was one of its employees at that store. It was his duty to deliver drugs and other articles purchased by defendant's customers to their homes. He also at times assisted at the soda fountain and did other work within the store when requested. During a period of his employment he had used with defendant's consent his own bicycle to make deliveries to the customers. Several months before the accident his bicycle was stolen, and for a time he made deliveries by walking or by using street cars, and, if the latter, defendant paid to him the street car fare. About a month before the accident he purchased with his own money a motorcycle and used it with defendant's consent in making the deliveries, just as he formerly had done with the bicycle. On week days he worked at the store from 6 o'clock p. m. until midnight. On Sundays his employment commenced at 12 o'clock noon, and he worked until 12 o'clock, midnight, with the exception that he was allowed an hour off, usually from 6 to 7 o'clock p. m., for the purpose of procuring his evening meal, or doing whatever he wished to do for himself. His home was about three miles from the store, and during said hour he usually went there for his evening meal, traveling to the home and back again to the store on his motorcycle. He was paid by defendant at the rate of 20 cents an hour while making deliveries or doing other work in the store, but was not paid anything for the hour that he was off duty on Sunday evenings. During said hour on the evening of August 3, 1930, while riding on his motorcycle to his home, by the usual route and for the sole purpose of getting his evening meal, he collided with plaintiff, a pedestrian on a street crossing in Ashland avenue, whereby plaintiff suffered the injuries complained of.

In *Nelson v. Stutz Chicago Factory Branch,* 341 Ill. 387, 392, 393, it is said:

"The liability of the owner of an automobile for damages occasioned through its negligent operation by another depends upon the principle of agency. To enable the person injured to recover from its owner damages caused by the negligent operation of an automobile, the plaintiff must prove that the operation was by the owner, or by his servant in the owner's business and by the owner's authority. The general rule is, that one who is injured by another's negligence must pursue his remedy against the person whose negligence caused the injury. Where, however, the relation of master and servant exists between the person guilty of the negligence and another sought to be held for the resulting damages, the negligence of the servant may be imputed to the master, and he may be held liable for the resulting damages if the servant guilty of the negligence was at the time acting in the master's business and within the scope of his employment. Outside the scope of his employment the servant is as much a stranger to his master as any third person."

In *Johanson v. Johnston Printing Co.,* 263 Ill. 236, 240, it is said:

"Outside of the scope of his employment the servant is as much a stranger to his master as any third person, and an act of the servant not done in the execution of services for which he was engaged cannot be regarded as the act of the master. If the servant step aside from his master's business for some purpose wholly disconnected with his employment the relation of master and servant is suspended. The act of the servant during such interval is not to be charged to his master. This doctrine is established by substantially all of the authorities." (Citing cases.)

In *Lohr v. Barkmann Cartage Co.,* 335 Ill. 335, the defendant was sued for damages for personal injuries

caused by the negligent operation of an automobile truck which it owned and which was being driven by a servant of the defendant, named Schwinnen. The defense was that at the time of the accident Schwinnen was not acting within the scope of his employment and was therefore not the defendant's servant. The undisputed evidence disclosed that Schwinnen had been ordered to take the truck to the defendant's garage, but that, instead of obeying the order, he went off on a frolic of his own, and at the time of the accident was more than four miles from the garage and traveling in the opposite direction. Plaintiff's evidence disclosed defendant's ownership of the truck and that the relation of master and servant existed between defendant and Schwinnen. After defendant's evidence had shown without contradiction that Schwinnen had disregarded defendant's instructions to take the truck to the garage and that at the time of the accident he was operating it not for his master's business and not within the scope of his employment, defendant at the close of all the evidence moved for a directed verdict in its favor, but the motion was denied, and plaintiff had a verdict and judgment for $4,200. The Appellate Court affirmed the judgment. In reversing the judgment without remandment our Supreme Court held that the trial court had erred in denying defendant's motion for a directed verdict in its favor, and said (p. 340):

"While it is admitted by plaintiff in error (defendant) that Schwinnen on that day was its agent and the presumption exists that the agency having been established continues, . . . such presumption is not evidence. Presumptions are never indulged where established facts exist. They supply the place of facts. When evidence is produced which is contrary to the presumption the presumption vanishes entirely. . . . Whether Schwinnen was in plaintiff in error's employ

at the time of the accident depends upon the facts surrounding that occurrence.''

In *Arkin v. Page,* 287 Ill. 420, 422, it is said:

''The owner of an automobile is not liable for an injury occasioned by the negligent use of the machine by his servant if the servant was at the time at liberty from the service of his master and not engaged in doing his master's business but was pursuing his own interests exclusively.''

In *Pearce v. Industrial Commission,* 299 Ill. 161, a case arising under the Illinois Workmen's Compensation Act, Cahill's St. ch. 48, ¶ 201 *et seq.,* it was held that where the employees of a certain employer voluntarily make an arrangement among themselves to cook their lunch and eat it on the employer's premises without his direction or sanction, an injury received by one of the employees, shortly before the noon hour and while he was returning on a public street after getting supplies for the meal, did not arise out of the employment. In reversing a judgment of the circuit court, which affirmed an award of the Industrial Commission in favor of said employee who had received the injury, our Supreme Court said (p. 164):

''Ordinarily, where the lunch period is not subject to the employer's control or restricted in any way and the employee is free to go where he will at that time, if he is injured on the public street, off the premises of the employer, the authorities hold that the injury does not arise out of the employment. (Citing authorities.) So far as the record shows, the place where defendant in error fell had no relation to nor was any part of the surroundings of his place of work but was a block or more away on a public street.''

In *Bloom v. Krueger,* 182 Wis. 29, it appears that defendant's employee, named Parris, during the lunch hour, used defendant's motor truck with its express or implied consent in going to his home for lunch, and

that on returning to work in the truck he so negligently drove the truck as to collide with the plaintiff, injuring him; that the main issue was whether in using the truck he did so within the scope of his employment with defendant and in its business; and that in the trial court the plaintiff had a verdict and judgment. In reversing the judgment and remanding the cause with directions to the trial court to dismiss plaintiff's complaint with costs, the Supreme Court of Wisconsin said (pp. 31, 32):

"During the lunch period the relationship of master and servant between the defendant and Parris was suspended, and the employee was at liberty to utilize his time solely for his own individual benefit and purposes. In other words, the lunch time was the employee's time and not the employer's. . . . The controlling fact in the case, which stands out foremost above all others, consists of the employee's use of the truck solely for the purpose of enabling him to obtain his noon-day meal. Assuming that the employer either expressly or impliedly consented to the use of his truck for this purpose, such use was and must be deemed to have been solely for the employee's benefit during a period of time while the relationship of master and servant was suspended. . . . It is therefore held that the truck in question was not used by the servant within the scope of his employment or for the purpose of facilitating the master's business."

In *Reilly v. Connable,* 214 N. Y. 586, an action to recover damages for personal injuries to plaintiff, received while riding a bicycle, in a collision between the bicycle and an automobile owned by defendant and driven by defendant's chauffeur, it appears that at the time of the collision the chauffeur was using the automobile to go to market for himself; that he had frequently used it in procuring supplies and doing errands for himself, but without asking for or receiv-

ing the express consent of defendant; that defendant on the occasion in question did not know that he was going to use the automobile; and that upon the trial plaintiff had a verdict and judgment. In reversing the judgment the reviewing court said (p. 590):

"The fact that the automobile was the defendant's did not make him liable. If the chauffeur was doing the defendant's business which he was employed to do, the defendant would have been equally liable had the chauffeur while walking or running or riding a bicycle negligently have collided with the plaintiff to her injury. The fact that the chauffeur caused the injuries during the period of his employment does not make the defendant liable. If the employee in doing any act breaks the connection between himself and his employer, the act done under those circumstances is not that of the employer. Nor would the defendant's permission or acquiescence in the use by his chauffeur for the personal business or pleasure of the chauffeur make the defendant liable. The permission of defendant to the chauffeur to use the automobile for purposes personal to the chauffeur and in which the defendant had no interest did not make him liable to the plaintiff. We hold that the act of the chauffeur in going to the market for the meat was not for the defendant or within the scope of the employment of the chauffeur and the defendant is not liable for his negligence."

In *Adams v. Tuxedo Land Co.*, 92 Cal. App. 266, 267 Pac. 926, 927, it was held that in an action for injuries sustained by plaintiff in a collision, while defendant's employee was driving his own automobile to a place for the purpose of there eating his lunch, defendant was not liable to plaintiff, because said employee then was using the automobile for his own purposes and not in his employer's business. To the same effect is the decision in *Helm v. Bagley,* 113 Cal. App. 602, 298 Pac. 826, 827, where the court said:

"We think it is clear from the evidence in this case that Bagley was not acting for his employer and within the scope of his employment at the time of the accident in returning to his own home for his dinner. He was in his own automobile and on his own business, which in no manner pertained to the business of his employer. He had stepped aside from his employer's business and had entered upon the performance of an independent purpose of his own."

The principles of law, enunciated by the courts of review of Illinois and other States as above shown, are in accordance with the general current of authority in this country, and in this connection the following additional cases may be cited: *Calhoon v. D. C. & E. Mining Co.*, 202 Mo. App. 564, 571; *Taylor v. Binswanger & Co.*, 130 Va. 545, 546; *Hill v. Haynes*, 204 Mich. 536, 539; *Vallavanti v. Armour & Co.*, 260 Mass. 417, 420; *Kyle v. Postal Telegraph-Cable Co.*, 118 Kan. 300, 301.

In view of the main issue in the present case as above stated, and after considering the undisputed evidence bearing upon that issue and the decisions and holdings in the adjudicated cases above outlined, we are of the opinion that the trial court erred as a matter of law in not allowing defendant's motion, made at the close of all the evidence, to instruct the jury to return a verdict in defendant's favor, and, after a contrary verdict had been returned in plaintiff's favor, in entering the judgment appealed from. We think it is clear from the undisputed evidence that defendant is not legally liable to respond in damages to plaintiff for the injuries he received in the accident in question. Accordingly, the judgment of the circuit court of July 13, 1932, is reversed.

*Reversed.*

SCANLAN, P. J., and SULLIVAN, J., concur.